IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| ROCHELLE SMITH STERNER,<br><br>Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | CV 12–208–M–DLC-JCL<br><br>FINDINGS & RECOMMENDATION |

Plaintiff Rochelle Sterner brings this action under 42 U.S.C. § 405(g) seeking judicial review of the decision of the Commissioner of Social Security denying her application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-434, §§ 1381-1385.

Sterner protectively applied for benefits in November 2009, alleging disability since June 2008, due to diabetes, nerve pain, numbness of the feet and

PAGE 1

hands, depression, and right hip/back pain. (Tr. 222-29; 274). Sterner's application was denied initially and on reconsideration, and Sterner requested a hearing. (Tr. 127-28; 135-38). Sterner appeared with counsel at her administrative hearing in front of an Administrative Law Judge in June 2011, and a supplemental hearing in January 2012. (Tr. 41-62; 63-121). In February 2012, the ALJ issued a decision denying Sterner's application for benefits and finding that she was not disabled within the meaning of the Act. (Tr. 20-32). The Appeals Council denied Sterner's subsequent request for review, making the ALJ's decision the agency's final decision for purposes of judicial review. (Tr. 1-6.) Jurisdiction vests with this Court pursuant to 42 U.S.C. § 405(g).

Sterner was 42 years old on her alleged onset date, and 45 years old at the time of the ALJ's decision.

## I. Standard of Review

This Court's review is limited. The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971);

*Widmark v. Barnhart,* 454 F.3d 1063, 1070 (9th Cir. 2006).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). This Court must uphold the Commissioner's findings "if supported by inferences reasonably drawn from the record." *Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[I]f evidence exists to support more than one rational interpretation," the Court "must defer to the Commissioner's decision." *Batson*, 359 F.3d at 1193 (*citing Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999). This Court "may not substitute its judgment for that of the Commissioner." *Widmark*, 454 F.3d at 1070 (*quoting Edlund*, 253 F.3d at 1156).

## II.  **Burden of Proof**

To establish disability, a claimant bears "the burden of proving an 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which...has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Batson*, 359 F.3d at 1193-94 (*quoting* 42 U.S.C. § 423(d)(1)(A)).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520. The claimant bears

the burden of establishing disability at steps one through four of this process. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). At the first step, the ALJ will consider whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(I). If not, the ALJ must determine at step two whether the claimant has any impairments that qualify as "severe" under the regulations. 20 C.F.R. § 404.1520(a)(4)(ii). If the ALJ finds that the claimant does have one or more severe impairments, the ALJ will compare those impairments to the impairments listed in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the ALJ finds at step three that the claimant has an impairment that meets or equals a listed impairment, then the claimant is considered disabled. 20 C.F.R. § 404.1520(a)(iii). If, however, the claimant's impairments do not meet or equal the severity of any impairment described in the Listing of Impairments, then the ALJ must proceed to step four and consider whether the claimant retains the residual functional capacity (RFC) to perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant establishes an inability to engage in past work, the burden shifts to the Commissioner at step five to establish that the claimant can perform other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v).

### III.  Discussion

Following the steps in the sequential evaluation process, the ALJ first found

that Sterner met the insured status requirements of the Act through December 31, 2011, and had not engaged in substantial gainful activity since her alleged onset date. (Tr. 22). The ALJ found at step two that Sterner had the following severe impairments: depression, degenerative disk disease of the lumbar spine, uncontrolled neuropathy, reactive airway disease, type II diabetes mellitus and temporomandibular joint disorder. (Tr. 22). At step three, the ALJ determined that Sterner did not have an impairment or combination of impairments that met or medically equaled any impairment described in the Listing of Impairments. (Tr. 23). The ALJ also found that while Sterner's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," her "statements concerning the intensity, persistence, and limiting effects of th[o]se symptoms [were] not credible to the extent they [were] inconsistent with [her] residual functional capacity assessment." (Tr. 27). The ALJ next determined that Sterner retained the residual functional capacity to perform a limited range of sedentary work. (Tr. 25). Although the ALJ found that Sterner was not capable of performing her past relevant work, he concluded there were a significant number of jobs in the national economy that she could perform, including work as an addressing clerk, document preparer, or credit information clerk. (Tr. 31).

    A.    **Medical Opinions**

PAGE 5

Sterner argues the ALJ erred by discounting the opinions of her treating primary care physician, Dr. Elizabeth White, and examining psychologist Dr. David Mahoney.

A treating physician's opinion is entitled to greater weight than that of an examining or reviewing physician on the basis that he has a "greater opportunity to observe and know the patient." *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. § 404.1527(c)(2).

If the opinion of a treating physician is uncontradicted, an ALJ must give "clear and convincing" reasons to reject the opinion. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). To discount the controverted opinion of a treating physician, the ALJ must provide "'specific and legitimate reasons' supported by substantial evidence in the record." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). Similar standards apply to the ALJ's evaluation of an examining physician's opinion. *Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir. 2006).

1. <u>Dr. Elizabeth White</u>

Dr. White has been Sterner's primary care physician since 2005 and treated

her over the years for back pain, depression, and various other conditions. (Tr. 660; 662-689; 709-12). Sterner's back pain apparently began following a motor vehicle accident in 2002, and was exacerbated by another motor vehicle accident in May 2007 and again after a fall in January 2008. (Tr. 27; 78; 433-566).

In 2010 and 2011, Dr. White provided several opinions regarding Sterner's limitations. In early 2010, Dr. White completed two Activity Assessment forms on which she indicated by check-mark that Sterner was fully incapacitated, could participate in employment training one to two hours a day, and could lift only five pounds. (Tr. 601-02). Dr. White wrote that Sterner's condition was "possibly permanent." (Tr. 601-02). In July 2010, Dr. White completed a third Activity Assessment form on which she indicated that Sterner was temporarily incapacitated as a result of degenerative disc disease and estimated that her condition would possibly improve in three to four months. (Tr. 600).

The following month, Dr. White completed a questionnaire on which she wrote that Sterner had "advanced" degenerative disc disease and could not perform even sedentary work. (Tr. 661). In particular, Dr. White indicated that Sterner could walk or stand for only five minutes before resting, stand and walk for a total of 20 to 30 minutes in an eight hour day, lift one to two pounds frequently and ten pounds occasionally, and would need to lie down for

approximately three hours during an eight hour day. (Tr. 660).

Three times in 2011, Dr. White completed physical activity assessment forms indicating that Sterner was permanently disabled. (Tr. 748–49; 778-81). Dr. White wrote on each assessment form that Sterner was limited to lifting one-half pound, standing and walking no more than 15 minutes during an eight hour day, and sitting no more than one to two hours in an eight hour day. (Tr. 749, 779, 781).

Sterner argues the ALJ did not provide adequate reasons for discounting Dr. White's opinions, and erred by not incorporating the limitations Dr. White identified into his residual functional capacity assessment.[1] The ALJ acknowledged that Dr. White had "provided numerous opinions" as to Sterner's functional capacity, including opinions that she was incapacitated, disabled, and "unable to participate in employment with or without accommodations for any amount of time." (Tr. 28). The ALJ gave those opinions little weight, however, for a number of reasons.

---

[1] Because Dr. White's opinions were contradicted by that of the state agency reviewing physician, Dr. William Fernandez, (Tr. 575-82), the ALJ could reject them for specific and legitimate reasons. *See e.g. Bray v. Commissioner of Social Security Administration*, 554 F.3d 1219, 1228 n. 8 (9th Cir. 2009); *Widmark v. Barnhart*, 454 F.3d 1063, 1066-67 (9th Cir. 2006).

PAGE 8

To begin with, the ALJ found that the limitations Dr. White identified were not consistent with her own treatment notes. (Tr. 28). As the ALJ noted, for example, Dr. White's records reflect that Sterner reported significant improvement with trigger point injections. (Tr. 28; 676-78; 682-84; 709). And while Sterner sometimes reported increased pain, the ALJ observed that Dr. White's recent progress notes indicated Sterner's back pain was well controlled on medication. (Tr. 28).

While Sterner undoubtedly has a history of back pain, Dr. White's records reflect that medication was effective in treating Sterner's symptoms. In November 2009, for example, Dr. White noted that pain medication gave Sterner "enough pain relief." (Tr. 528-31). While Sterner's back pain sometimes increased, by June 2010 she reported that a pain medication patch was working "very well" for her. (Tr. 671). In August 2010, Dr. White described Sterner's pain levels as acceptable. (Tr. 664). In February 2011, Dr. White increased the strength of Sterner's pain medication patch so it would be effective for a longer periods of time, and in September 2011 wrote that her back pain was "well controlled on current meds." (Tr. 746; 788). The ALJ reasonably discounted Dr. White's opinions as to the severity of Sterner's physical limitations in part because they were not consistent with her contemporaneous treatment notes. *See e.g. Carmickle*

*v. Comm'r of Soc. Sec. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

In addition, the ALJ legitimately found that Dr. White's opinions were not consistent with the objective medical evidence, which showed only mild to moderate abnormalities. (Tr. 28). In September 2009, for example, Dr. White confirmed that a recent MRI of Sterner's lower back showed "no significant disease." (Tr. 530-31). It does not appear that Dr. White ever ordered any additional imaging studies. As the ALJ explained it, Sterner's "diagnostic imaging shows mild to moderate degenerative disk disease and [there] is not any significant objective evidence from any physical examinations that shows [Sterner's] impairment is more severe than evidence in the diagnostic imaging from February and August 2009." (Tr. 28). The ALJ permissibly found the fact that Sterner's MRI results showed no significant abnormalities undermined Dr. White's opinions as to the extent of her physical limitations. *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (the ALJ may reject a treating physician's opinion if it is "brief, conclusory, and inadequately supported by clinical findings").

The ALJ also discounted Dr. White's opinions as to the severity of Sterner's physical limitations on the ground that she never referred Sterner to an orthopedic

PAGE 10

specialist for treatment of degenerative disk disease and associated back pain. (Tr. 28). This too was a legitimate basis for giving Dr. White's opinions less weight. The ALJ thus provided sufficiently specific and legitimate reasons for rejecting Dr. White's opinions regarding Sterner's functional capacity.

## 2. Dr. Mahoney

Sterner next maintains the ALJ erred by not giving more weight to the opinion of clinical psychologist Dr. Mahoney, who evaluated Sterner in June 2011 and diagnosed her with major depressive disorder of moderate severity. (Tr. 759-67). Dr. Mahoney completed a mental residual functional capacity questionnaire stating that Sterner's endurance, stamina, and moods were all compromised. (Tr. 763). As a result, he found that Sterner was unable to complete a normal workday and workweek without interruption. (Tr. 765). Dr. Mahoney also identified serious limitations in Sterner's ability to maintain attention, sustain an ordinary work routine without special supervision, perform at a consistent pace without an unreasonable number and length of rest periods, and deal with normal work stress.[2] (Tr. 765).

The ALJ agreed that Sterner's depression constituted a severe impairment,

---

[2] Because Dr. Mahoney's opinion was contradicted by that of state agency mental health professional Peg Herman, Ph.D., (Tr. 583-96), the ALJ could reject it for specific and legitimate reasons.

PAGE 11

but rejected Dr. Mahoney's assessment as to the severity of her functional limitations. The ALJ pointed out that Dr. Mahoney had diagnosed Sterner with a depressive disorder of only moderate severity, and performed "a mental status examination without any significant objective findings." (Tr. 28). Of particular note to the ALJ was the fact that Dr. Mahoney assessed Sterner's Global Assessment of Function (GAF) at 60, which is just "one point away from the mild range." (Tr. 28). The ALJ reasonably found that the GAF assigned by Dr. Mahoney was not indicative of the severe functional limitations set forth in his responses to the functional capacity questionnaire. (Tr. 28). And to the extent Dr. Mahoney's opinion related to physical abilities like Sterner's "stamina" and "endurance," the ALJ permissibly gave the opinion little weight because Sterner's physical problems were outside of Dr. Mahoney's specialty. (Tr. 29). *See Molina v. Astrue* (the opinion of a specialist is entitled to greater weight than that of a nonspecialist); *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996).

      The ALJ thus provided specific and legitimate reasons for rejecting Dr. Mahoney's opinion, and reasonably credited the opinion of medical expert Dr. Michael Enright instead. Dr. Enright testified based on his review of the medical records, including Dr. Mahoney's report, that Sterner had moderate limitations in her activities of daily living and social functioning, but only mild limitations in

PAGE 12

concentration, persistence and pace. (Tr. 46). Dr. Enright testified that Sterner could understand and remember instructions, but that she might have difficulty carrying them out. (Tr. 47). Dr. Enright also said that Sterner would have some difficulty interacting with the general public. (Tr. 47-48). The ALJ accounted for these mental limitations by limiting Sterner to sedentary work consisting of simple, routine, and repetitive tasks, only occasional interaction with the general public and co-workers, and work requiring only occasional supervision. (Tr. 25).

   B.  **Credibility**

Sterner argues the ALJ failed to cite sufficiently clear and convincing reasons for discrediting her testimony.

In considering a claimant's credibility with regard to subjective symptom testimony an ALJ must perform a two-stage analysis: (1) the *Cotton* test; and (2) an analysis of the claimant's credibility as to the severity of the symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citing *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986)). The *Cotton* test requires only that the claimant (1) produce objective medical evidence of an impairment; and (2) show that the impairment(s) could reasonably be expected to produce some degree of symptom. *Smolen*, 80 F.3d at 1281-82 (*citing Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) and *Cotton*, 799 F.2d at 1407-08; 20 C.F.R. § 404.1529(a) and (b)).

PAGE 13

If the *Cotton* test is satisfied and there is no evidence of malingering, then the ALJ can reject subjective testimony as to the severity of a claimant's symptoms only by citing specific, clear and convincing reasons for doing so. *Smolen*, 80 F.3d at 1283-84 (*citing Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)). To assess a claimant's credibility, the ALJ may consider ordinary credibility evaluation techniques, unexplained or inadequately explained failure to seek or follow treatment, and the claimant's daily activities. *Smolen*, 80 F.3d at 1284. However, "[g]eneral findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaint." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (*quoting Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

Here, the ALJ found that Sterner suffers from several severe impairments that can reasonably be expected to produce some degree of symptom. Sterner has thus made a showing sufficient to meet both prongs of the *Cotton* test.

Sterner testified that she has problems walking, and gets disoriented when she stands up. (Tr. 86). She said she is in so much pain every day that it hurts to put on her shoes, and she cannot stand long enough to do the dishes. (Tr. 97). Sterner explained that her hands twitch and she cannot carry a cup of coffee or a pot of water from the sink to the stove. (Tr. 99). She testified that she spends

about four or five hours a day lying down because of her back pain. (Tr. 99-100). Sterner also testified that she has three to four "bad" days each week, during which she does "lots of crying" and has difficulty getting out of bed. (Tr. 103).

The ALJ considered Sterner's subjective testimony, but found her less than entirely believable in part because the objective medical evidence did not support the level of pain and limitations she alleged. (Tr. 30). While Sterner alleged back pain so severe that she had to lie down several hours a day, the ALJ noted that "diagnostic imaging show[ed] only mild degenerative disc disease in her lumbar spine" and recent medical records reflected that her pain was controlled on medication. (Tr. 30). The ALJ permissibly found that the lack of objective medical evidence undermined Sterner's testimony as to the debilitating extent of her back pain. *See e.g. Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007) (the lack of objective medical evidence is an appropriate factor for the ALJ to consider in evaluating credibility); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

The ALJ also discounted Sterner's testimony in part based on the her course of treatment. (Tr. 30). In particular, the ALJ noted that Sterner's depression had been treated entirely by her primary care physician, and she had not sought or obtained any type of counseling or therapy. (Tr. 30). The ALJ reasonably found

PAGE 15

that Sterner's treatment history was not consistent with her testimony that her depression was so severe that she had three to four bad days each week, during which she cried and had difficulty getting out of bed. *See e.g. Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (stating that "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding the severity of an impairment").

The ALJ also observed that Sterner reported engaging in daily activities that were not consistent with her allegations of disabling pain and limitations. (Tr. 26). As the ALJ noted, Sterner stated in a function report that she occasionally took care of her grandchildren, played darts at a bar once a week for entertainment, and performed some volunteer work. (Tr. 26; 307-11). The ALJ legitimately found that Sterner's ability to engage in those activities was not entirely consistent with her testimony that she spent four to five hours a day lying down, could not stand long enough to wash dishes, and could not even carry a cup of coffee.

Reading the ALJ's decision as a whole, the Court is satisfied that he cited sufficiently clear and convincing reasons in support of his adverse credibility determination.

### C. Lay Testimony

Sterner next argues the ALJ did not cite germane reasons for discounting

PAGE 16

written statements provided by her daughter and a former co-worker.

It is well-established in the Ninth Circuit that the "ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Commissioner*, 454 F.3d 1050, 1053 (9th Cir. 2006) (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 2003); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e)). "If the ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness." *Stout*, 454 F.2d at 1053 (quoting *Dodrill*, 12 F.3d at 919). Competent lay witness testimony "cannot be disregarded without comment." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).

Nonetheless, the ALJ need not "discuss every witness's testimony on a individualized, witness-by-witness basis." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th cir. 2012). "Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina* 674 F.3d at 1114. Moreover, "an ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'" *Molina v. Astrue*, 674 F.3d at 1122 (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)).

One of Sterner's former co-workers, Leah Hamilton, submitted a brief

PAGE 17

written statement on her behalf. (Tr. 337). Hamilton wrote that in her "opinion there [was] no way that [Sterner] would be capable of working an[] eight hour shift, not even for one day let alone a five day work week." (Tr. 337). Hamilton stated that Sterner could "not sit or stand for any length of time before her pain becomes unbearable and she has to change positions." (Tr. 337).

Hamilton's statement says little about her personal observations. For the most part, she simply states that Sterner is unable to work. The ALJ permissibly discounted Hamilton's statement on the ground that she is not a medically acceptable source, and the issue of disability is reserved to the Commissioner. (Tr. 26) *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). To the extent Hamilton believed Sterner could not sit or stand for any length of time and would have to change positions, it is worth noting that the ALJ incorporated a "sit-stand option" into the residual functional capacity assessment. Specifically, the ALJ concluded that Sterner "must be allowed the option to sit or stand, alternatively, at will, as long as she is not off task more than ten percent of the work day." (Tr. 25).

Sterner's daughter, Shalada Bengston, submitted a function report describing limitations similar to those Sterner described in her own testimony. (Tr. 292-300). The ALJ discounted Bengston's statement because she was not a

PAGE 18

medically acceptable source and because the issue of disability is for the Commissioner to decide. But because Bengston's statement was not limited to a conclusion on the issue of disability, this was not a sufficiently germane reason for discounting Bengtrom's observations. Nonetheless, because Bengston's statement largely reiterated Sterners's own testimony, which the ALJ properly discredited, any error on the ALJ's part in failing to provide additional reasons was harmless. *See See Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012) (ALJ's failure to consider lay witness testimony was harmless where that testimony "did not describe any limitations beyond those" described by the claimant, "which the ALJ discussed at length and rejected based on well-supported, clear and convincing reasons."); *Valentine v. Commissioner Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (upholding rejection of family member's testimony, which was similar to the claimant's, for the same reasons given for rejection of the claimant's testimony).

## IV. Conclusion

For all of the above reasons, the Court concludes that the ALJ's decision is based on substantial evidence and free of prejudicial legal error. Therefore,

IT IS RECOMMENDED that Sterner's motion for summary judgment be denied, the Commissioner's motion for summary judgment be granted, and the

Commissioner's decision be affirmed.

DATED this 10th day of April, 2014

/s/ Jeremiah C. Lynch
Jeremiah C. Lynch
United States Magistrate Judge